# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**ASHLEE N. KEENAN**
**and KYLE J. KEENAN**

FILED BY _____ D.C.

DEC 30 2021

**Plaintiffs,**

**Case No.**
21-cv-14505-Cannon/Maynard

**v.**

**MERRICK B. GARLAND,**
**U.S. ATTORNEY GENERAL,**
**in his official capacity**

**Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Ashlee N. Keenan and Kyle J. Keenan complain of Defendant, Merrick B.

Garland as Attorney General, in his official capacity as follows:

1.  This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42

    U.S.C. § 2000e *et seq.,* 28 U.S.C. § 1367 and 28 U.S.C. § 1391.

1

2.      Plaintiffs have complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted their administrative remedies.

3.      Merrick B. Garland is the United States Attorney General and as such directs the United States Department of Justice ("DOJ")

4.      The Drug Enforcement Administration ("DEA") is an agency within the United States Department of Justice ("DOJ").  It is directed by an Administrator, currently Ms. Anne M. Milgram. It also has a Principal Deputy Administrator, currently Louis Milione, who serves at the pleasure of the Administrator. The DEA is composed of various departments and divisions, including inspections, human resources, enforcement, diversion and intelligence. Preston L. Grubbs was formerly the Principal Deputy Administrator, Brian McKnight formerly served as the Chief Inspector ("CI") who oversees two entities, the Inspections Division formerly supervised by Deputy Chief Inspector Jeffrey Walsh ("DCI Walsh") and the Office of Professional Responsibility ("OPR"), supervised by Deputy Chief Inspector Gary Owen ("DCI Owen") all of whom are or were located in Springfield, Virginia at all times material herein.  Human Resources was, at all times material herein, supervised by Sharyn Saunders and the Intelligence Division was supervised by Chief of Intelligence, Paul Knierim.                                                                                                          .

DEA is also divided into various operational field divisions, including the Miami Field Division ("MFD") located in Weston, Florida, in which both Plaintiffs are employed and in which the majority of the acts complained of herein occurred over the past thirty-two (32) months. MFD functions within the entire state of Florida including

District                                                                                          Offices.

MFD has a number of district offices ("DO") and Resident Offices (RO") throughout the state of Florida.  Those DOs and ROs that are involved in this matter are: the West Palm Beach District Office ("WPBDO") located in West Palm Beach, Florida, and is supervised by Assistant Special Agent in Charge, Sheldon J. Burkett ("ASAC Burkett"), a named Responsible Management Official ("RMO").   The RO in which a majority of the unlawful acts occurred is the Port St. Lucie RO ("PSLRO") currently supervised by Resident Agent in Charge Edward Alvey ("RAC Alvey) and Group Supervisor Richard LaRocca ("GS LaRocca"), who together with ASAC Burkett who oversees and supervises PSLRO, are also deemed the Responsible Management Officials ("RMOs").   In addition, the following named DEA personnel along with former Principal Deputy Administrator Preston Grubbs, former CI McKnight, DCI Owens, former OPR SI Peter Scrocca, OPR Inspector Gergye, OPR Inspector Brad Uhl (now Senior Inspector), Special Agent Randy Matschner ("SA Matschner"), Special Agent Ron Coddington ("SA Coddington"), Special Agent Andrew Irwin ("SA Irwin") have aided, abetted, acquiesced and/or ignored the unlawful actions of the RMOs directed at and to the Plaintiffs.  These same individuals have participated in and ignored violations of DEA policy by each of the RMOs and others many of which have been reported to the DEA Chief Counsel's Office and to the DEA Office of Professional Responsibility on several occasions.

5. Plaintiff Ashlee N. Keenan is a female Intelligence Research Specialist ("IRS") who, at all times mentioned herein, was assigned to the PSLRO RO.  She was the only female employee at the PSLRO at all times mentioned herein.  She began her employment with

3

the DEA in 2008 and volunteered to go to the PSLRO in 2015. In 2020 that position became her formal assigned duty position per DEA Headquarters. IRS Keenan has attained Outstanding Performance Evaluations (the highest level of performance attainable) for the last several years and has served as an acting Group Supervisor on several occasions. She has received awards for her work performance from local law enforcement entities.  On or about January 3, 2022, IRS Keenan, as a result of the actions of the Responsible Management Officials ("RMOS") and DEA senior management's failure to properly and completely address the unlawful actions of the DEA and a very hostile work environment, sought a position at the Jacksonville, Florida District Office within the MFD and has had to move her family to that area to avoid further unlawful activity.

6. Plaintiff Kyle J. Keenan is a male Special Agent, GS-13 who began his employment as a Special Agent in 2002 and was assigned to the PSLRO in 2013.  In addition to his duties as a Special Agent, he is the only certified paramedic in DEA for the entire MFD. He is a member of the DEA Special Response Team ("SRT") which serves a large portion of the MFD. He is considered a Subject Matter Expert ("SME") to DEA SRT on the topics of tactical medicine.  He has also served as an instructor to DEA personnel, the United States Attorney's office and local and state law enforcement agencies in the safe handling of certain drugs including the deadly drug Fentanyl and its derivatives. He has had a stellar career with Outstanding Performance Evaluations (the highest level attainable) for every year since he began his employment with the DEA, a period of nineteen (19) years. SA Keenan will necessarily be moving to the DEA Jacksonville,

Florida District Office to avoid all of the unlawful acts of the RMOs that have occurred and may occur in the future.

7. Defendant, Merrick B. Garland, in his official capacity has engaged in a pattern and practice of discrimination based on gender (female), harassment, retaliation for protected activities and the creation and establishment of retaliatory hostile work environments and other unlawful activity, all to the damage of Plaintiffs. Defendant, by and through its employees, including but not limited to the actions of the RMOs, has also engaged in a pattern and practice of retaliation in relation to Equal Employment Opportunity ("EEO") claims or participation as a witness or both on behalf of other parties' claims and/or in relation to the reporting of misconduct by supervisor personnel or other personnel within the DEA to the DEA Office of Professional Responsibility ("OPR") and to the DEA Office of Chief Counsel. These include, but are not limited to, retaliation for current EEO claims and for engaging in protected activities, to wit, being a witness in an EEO claim or the report of misconduct. The pattern and persistent practice of discrimination, harassment, hostile work environments and retaliatory conduct has caused DEA employees to be dissuaded from reporting misconduct of supervisory personnel or other employees or in other words created a "chilling" effect on                                     all                                     employees.

   In the instant matter, it includes fear for reporting misconduct and DEA policy violations by supervisory personnel and co-workers at PSLRO and misconduct and unlawful actions of the WPBDO RMO ASAC, Sheldon Burkett, when he was a supervisor at PSLRO and in his current position, all of which is of record. Such actions result in other employees being dissuaded from reporting irregularities that

5

occur.

In a recent MFD division-wide inspection, it was reported that more than twenty percent (20%) of all employees who were asked about filing EEO claims or reporting other forms of misconduct stated that they would not do so after having seen what happens to those who are brave enough, like the Plaintiffs herein, to do so.  It is also believed that had the same question been asked and the employees been able to respond anonymously, the percentage would have exceeded fifty percent (50%).

8. IRS Keenan filed a formal EEO complaint on July 19, 2019 and more than 180 days have passed since that point, thus satisfying the jurisdictional requirements of 42 U.S.C § 2000e-16(c). IRS Keenan filed her request for a hearing with the EEOC on April 14, 2020.   More than 180 days have passed without final action by the EEOC and therefore the administrative remedies as to IRS Keenan have been exhausted.

9. SA Keenan filed an EEO complaint on July 30, 2019 and more than 180 days have passed since that point, thus satisfying the jurisdictional requirements of 42 U.S.C § 2000e-16(c). SA Keenan filed his request for a hearing with the EEOC on June 8, 2020, and more than 180 days have passed without a final action by the EEOC. The exhaustion of administrative remedies as to SA Keenan have been met.

10. The Plaintiffs' claims, while they are separate and distinct claims, arise out of many of the same or similar occurrences or series of transactions and/or actions by the same RMOs and their alleged accomplices, including but not limited to personnel of the DEA Chief Inspector's Office and, in particular, personnel in the Southeast OPR in Plantation, Florida. The claims have common questions and issues of fact and law in nearly all aspects of this matter with the vast majority of the actions complained of having

occurred within the jurisdictional boundaries of the United States District Court for the Southern District of Florida, to wit, within the southern boundaries of the DEA Miami Field                                        Division                                        Headquarters.

## GENERAL ALLEGATIONS

11.    The Defendant, over the last several years, has engaged in numerous acts of discrimination, harassment, retaliation and the creation of retaliatory hostile work environments for female employees, including female Special agents, for administrative personnel, both male and female, for Diversion Investigators, both male and female and for Intelligence Research Specialists mostly female throughout the agency.

This unlawful activity has been ongoing for a number of years and has been allowed to continue as a result of a culture of permitting, acquiescing in and ignoring reported unlawful acts of supervisory personnel unlawful acts and DEA policy violations that are abusive, retaliatory and intended to deter DEA personnel from reporting the abusive conduct.  This occurs with the assistance and support from individuals at the local level and entities at the Senior Executive Service ("SES") level of management at DEA Headquarters.

The Defendant and the DEA have done little or nothing to prevent such activity and foster a general feeling, a "chilling effect", throughout the agency that one should not make a complaint or assist another in filing a complaint for harassment, or both, including sexual harassment, for discrimination on any basis including but not limited to race, age, gender and ethnicity.  If a complaint of such a nature is filed or if an

employee acts as a witness or assists another in the filing of such a complaint, they are targeted for retaliation in several forms, including harassment, limitation of job duties, false accusations of wrongdoing, failure to promote, forced transfers, and involuntary constructive transfers (not by choice but by necessity for their own physical and mental well-being) and compelled to perform their duties in a very hostile work environment.

Local Supervisory personnel, together with senior management officials at DEA Headquarters, including but not limited to the Office of Chief Inspector, Inspections and Office of Professional Responsibility sections and the former Principal Deputy Administrator, took steps to ignore, delay, denigrate, demean and attack the character and work performance of the employee who reports abuse, unlawful conduct or policy violations or all such matters in an effort to protect the offending supervisory personnel.

OPR personnel, including inspectors who have a personal relationship/friendship with those under investigation and fail to disclose such relationships, as occurred in the instant matter, basically ignore the complaints against the supervisors and redirect the investigation into an investigation against the complainants to protect the agency. These unlawful acts occur from the training academy to the operations in the field and to employees of every type at DEA headquarters, Division offices, District offices and Resident offices, including administrative personnel, all acting unlawfully.

The unlawful actions of the DEA supervisory personnel and DEA senior management set forth in detail below in the instant case are merely a microcosm of the harassment, discrimination, retaliation, retaliatory hostile work environments, favoritism, failure to promote, false allegations, bullying and outright unlawful acts and DEA policy violations that occur on a daily basis in the DEA and, for the most part, are

8

ignored and allowed to continue to exist unabated by DEA senior management, including the Administrator's office and Defendant, all to the detriment of all of the DEA         employees         and         the         DEA's         overall         mission

## A.   Ashlee N. Keenan

12.    As a point of reference, in February/March 2019, DEA Senior Management of the Miami Field Division ("MFD") proposed the merger of the Special Response Team and CLET.  ASAC Burkett, a principal actor herein, was opposed to the proposed merger and would not allow special agents under his command, especially those from PSLRO where SA Keenan was assigned, to "try-out" for the SRT positions. SA Keenan, the co-worker and husband of IRS Keenan was sought after by SRT leadership due to his extensive experience and special skills to participate in this program.  ASAC Burkett opposed SA Keenan's participation but was later convinced by senior management to allow SA Keenan and others so interested from PSLRO to try out for the position.  SA Keenan was selected, all to the chagrin and anger of ASAC Burkett which led, in part, to the actions against IRS Keenan and SA Keenan.

13.    On March 7, 2019, SA Keenan, by and through his former attorney, sent an anonymous complaint to the Department of Justice, Office of Inspector General ("DOJ IG") and to the Department of Justice Office of Professional Responsibility ("DOJ OPR").  The DOJ IG, in turn, sent the letter to DEA OPR, Chief Inspector's Office who in turn sent it to the DEA Southeast OPR office in Plantation Florida.

14.    Within the anonymous complaint, IRS Keenan, along with several other employees at the PSLRO, was named as a witness to the misconduct of ASAC Burkett as alleged

by SA Keenan. SA Keenan was also named as a witness. The anonymous letter included allegations of numerous violations of DEA and DOJ policy, fraud, waste and misuse of government vehicles and government property by ASAC Burkett together with documentary evidence of the same. The fact that IRS Keenan was named as witness in the anonymous complaint caused her to become a target of harassment and retaliation by ASAC Burkett with unlawful retaliation and harassment being also directed against SA Keenan. The complaint was filed anonymously because SA Keenan feared retaliation for submitting the complaint.

15.    On or about April 8, 2019, IRS Keenan was told by a co-worker that she had a target on her back just as her husband, SA Keenan, did for his role in his desire to try out as a member of the DEA SRT against the wishes of ASAC Burkett.

16.    Upon information and belief, on or about April 15, 2019, ASAC Burkett was surreptitiously and in violation of DEA policy allegedly informed by an OPR Senior Investigator at the SE OPR office, one Peter Scrocca, and/or other OPR personnel that an anonymous complaint had been lodged against him and was provided a copy of the anonymous complaint. ASAC Burkett, through a process of elimination, perceived SA Keenan as the author of the complaint and became aware that IRS Keenan was named as a witness in the anonymous complaint. Thus, along with the action against IRS Keenan and SA Keenan for the SRT issue, IRS Keenan and SA Keenan were also being retaliated against for their participation in their protected activity, to wit, serving as witnesses to SAC Burkett's misconduct and fraud, hence the beginning of the retaliatory action against IRS Keenan and SA Keenan. No other individuals named in the anonymous complaint as witnesses were retaliated against by ASAC Burkett, RAC

Alvey or GS LaRocca because most of them were or had been engaged in various acts of misconduct and policy violations.

17.     IRS Keenan has worked in the PSLRO since 2015.  She had an excellent relationship with her co-workers and with all of the Special Agent supervisory personnel, including ASAC Burkett and received outstanding yearly performance evaluations from her supervisors, until such time as ASAC Burkett identified her as a witness in the anonymous complaint and that her husband, SA Keenan, had, in ASAC Burkett's mind, acted against his desire to keep SA Keenan from participating in the newly formed SRT/CLET merged group.

18.     On April 22, 2019, SA Keenan, had a series of conversations with acting GS LaRocca and acting RAC Alvey in which he was told he could attend SRT tryouts. SA Keenan needed written authorization but both acting GS LaRocca and acting RAC Alvey refused to do so and were upset SA Keenan had asked them to do so.  Ultimately an SRT Group Supervisor became involved and his correspondence was used as verification that SA Keenan could attend SRT.

19.     On or about April 23, 2019, ASAC Burkett, not in IRS Keenan's chain of command, began a series of attempts to have IRS Keenan moved from PSLRO.  The reasons stated by ASAC Burkett as to the need to move her or limit her time spent at PSLRO were and are without a basis in fact, were intended to discriminate against her as a female, to harass her, to retaliate against her and SA Keenan for their protected activity and to cause IRS Keenan's work environment to become as hostile as possible. These alleged reasons to move IRS Keenan to WPBDO changed on an almost daily basis.

20.     On April 23, 2019, ASAC Burkett approached IRS Keenan's Group Supervisor, Derek Sousa ("GS Sousa"), with the first of five reasons why he, ASAC Burkett, wanted to transfer/move IRS Keenan to the WPBDO.  ASAC Burkett stated that there were staffing issues at WPDO and that PSLRO was not that busy to require a full time Intelligence Research Specialist there each day.  ASAC Burkett, knowing the travel and child care issues that such a change would cause IRS Keenan, wanted IRS Keenan to report to WPBDO three to four days per week commencing in May 2019.  He made this request despite the fact that two to three months prior, ASAC Burkett detailed to GS Sousa how busy PSLRO was and that there should be two IRSs at that location.

21.     On April 24, 2019, GS Sousa informed IRS Keenan that ASAC Burkett now wanted IRS Keenan to work in the WPBDO four days per week and one day at PSLRO and eventually report to WPBDO permanently.  IRS Keenan informed GS Sousa of what occurred with SA Keenan on April 22, 2019 and the impact it would have on her as a wife and mother.

22.     On the evening of April 24, 2019, ASAC Burkett again approached GS Sousa with alleged reason number two as to why IRS Keenan should be moved to WPDO.  This time the alleged reason was that ASAC Burkett did not want a husband and wife in the same office.  ASAC Burkett made this comment which he knew to be a false pretense and despite the fact that there was a husband and wife working at WPBDO at that time without any complaint or concern by ASAC Burkett.

23.     On April 25, 2019, PSLRO co-worker, SA Matschner and SA Coddington agreed that ASAC Burkett's conduct was retaliatory.  On that same day, SA Matschner asked acting RAC Alvey to call ASAC Burkett because they were working on a special case,

T-III, among other ongoing active cases, and there needed to be an IRS that would sit physically at PSLRO. SA Matschner said acting RAC Alvey called ASAC Burkett and after a long discussion ASAC Burkett would not budge on his desire to move IRS Keenan to the WPBDO. ASAC Burkett stated that if they needed an IRS, they could call IRS Keenan at WPBDO.

24.    On April 25, 2019, SA Keenan spoke with acting GS LaRocca and told him that the actions of ASAC Burkett in trying to move IRS Keenan to the WPBDO for three to four days per week and ultimately permanently to WPBDO was harassment and retaliatory and should not be tolerated.  The retaliation was, at that time, based at least in part on ASAC Burkett's anger regarding the SRT issues.  SA Keenan was unaware at that time about the anonymous complaint having been made known to ASAC Burkett by OPR personnel.   As a result of that conversation, acting GS LaRocca, SA Keenan's supervisor, was made aware that ASAC Burkett was engaged in bullying and retaliation against both SA Keenan and IRS Keenan and the reasons therefor. Acting GS LaRocca said all he knew was that there were staffing issues at WPDBO.  Acting GS La Rocca also stated that here was nothing he could do and it was "out of his hands", he wanted to get promoted and that SA Keenan "knew how ASAC Burkett is".

25.    On April 29, 2019, GS Sousa informed IRS Keenan of ASAC Burkett's alleged third reason for her removal from PSLRO on several days with the goal of ASAC Burkett to make it permanent. ASAC Burkett told GS Sousa that IRS Keenan and SA Keenan had to be separated and alleged that IRS Keenan was showing favoritism to SA Keenan's cases. Any analysis of IRS Keenan's work would and has debunked this false statement. ASAC Burkett told GS Sousa that the complaint of favoritism came from acting RAC

Alvey and acting GS LaRocca. ASAC Burkett would repeat this false allegation, along with other false allegations against IRS Keenan, on several occasions throughout 2019 and 2020 and thereafter.

26.    On or about May 13, 2019, acting GS LaRocca and acting RAC Alvey, unknown to IRS Keenan, began an unauthorized surveillance of IRS Keenan using the security camera system installed at PSLRO.  It was used to video IRS Keenan's arrivals and departures.  These same two individuals, acting without authority, kept a log that was to be used against IRS Keenan at some time in the future.  This information did not become known to IRS Keenan until much later.  This action was deemed unacceptable and inappropriate by SAC Wright once he was informed of its occurrence.

27.    On May 15, 2019, ASAC Burkett told GS Sousa he was willing to compromise.  This is alleged reason/story number four used by ASASC Burkett to validate his retaliatory and discriminatory conduct.  He would allow IRS Keenan to work at WPBDO one or two days per week with the condition that she would not support SA Keenan's cases at all. This attempt at a quid pro quo was nothing more than another discriminatory and retaliatory act against IRS Keenan and SA Keenan.  The allegation of favoritism was invalid and outright false and has been proven to be by a review of IRS Keenan's work records.

28.    On May 15, 2019, SA Matschner informed IRS Keenan that he had spoken to acting GS LaRoccca about the favoritism allegation.  Acting GS LaRocca told SA Matschner that he was aware of the allegation but he did not make a complaint to anyone.  Acting GS LaRocca also stated that he was aware that acting RAC Alvey was "on board with Sheldon (Burkett)".  ASAC Burkett was using acting RAC Alvey to assist him in

retaliating, bullying, harassing and discriminating against IRS Keenan. His reasons for moving IRS Keenan were not being accepted by IRS Keenan's supervisors. SA Keenan was told by SA Matschner that ASAC Burkett would use supervisors at PSLRO to "get him". This now included IRS Keenan.

29.    On May 16, 2019, GS Sousa informed IRS Keenan that ASAC Burkett, alleged reason/story number five, that ASAC Burkett was told that the reason why former ASAC McKenna moved her to PSLRO in 2015 was because IRS Keenan did not get along with the other IRS's. ASAC Burkett was repeating another lie about IRS Keenan. This story was deemed to be false by two of the IRS's at WPBDO, including one who served as IRS Keenan's supervisor from approximately August 2018 to February 2019. The falsity of this allegation by ASAC Burkett was confirmed by these same two IRSs in their interviews under oath conducted in 2019 and 2020 by DEA OPR inspectors. In fact, the move to PSLRO was voluntary, beneficial to her child care needs and no one else wanted to move to that location because of the distance from WPBDO.

30.    On May 21, 2019, GS Sousa also informed IRS Keenan that ASAC Burkett was making additional allegations that IRS Keenan was using the back stairs to enter and leave the PSLRO. He implied that there was something negative or improper in doing so.

31.    On May 21, 2019, ASAC Burkett told GS Sousa, IRS Keenan's first line supervisor, that IRS Keenan was not submitting very many phone subpoenas to acting RAC Alvey, thus suggesting IRS Keenan was not doing her job. GS Sousa explained to ASAC Burkett that he, GS Sousa, is the primary signer of her electronic subpoenas. This false

information was provided to ASAC Burkett by RAC Alvey to support ASAC Burkett's "reasons" for moving IRS Keenan to WPBDO.

32.    On May 21, 2019, ASAC Burkett told GS Sousa that there are some agents in the PSLRO to whom IRS Keenan does not talk.    As of April 25, 2019, after SA Keenan advised acting GS LaRocca of the retaliatory and unlawful actions of ASAC Burkett and when ASAC Burkett became aware of the anonymous complaint against him, several special agents in the office ignored, avoided, would not make eye contact and stopped speaking with IRS Keenan totally.    The actions of ASAC Burkett, acting RAC Alvey and acting GS LaRocca created a very retaliatory and hostile work environment where IRS Keenan was unfairly ostracized, scrutinized and unjustly criticized with respect to her work performance, work hours and overall performance.    ASAC Burkett, RAC Alvey and GS LaRocca had solicited several Special Agents ('SA's") to make false and/or negative comments about her, her work performance, her demeanor and work habits.    This same hostile work environment continued despite nearly all of DEA being on telework status in early 2020 due to the Covid-19 pandemic. The accusations against IRS Keenan continued, she was not and has not been properly utilized as an intelligence research specialist and such a condition continued as is set forth below.

33.    On May 29, 2019, ASAC Burkett went to GS Sousa's office at the WPBDO at which time ASAC Burkett continued to pressure GS Sousa to transfer IRS Keenan to WPBDO. He told GS Sousa that if IRS Keenan did not like it, she could file an EEO claim or some kind of claim but it would not work. ASAC Burkett told GS Sousa that he went directly to SAC Wright about IRS Keenan's transfer and SAC Wright agreed.    It was not an accurate statement and he admitted he did not follow the proper chain of command.

34.   On June 1, 2019, SA Keenan, for the second time, informed acting GS LaRocca that ASAC Burkett and acting RAC Alvey were engaged in harassment and retaliatory and discriminatory conduct towards IRS Keenan and himself.   He also stated that ASAC Burkett was a bully and that he, GS La Rocca did nothing about SA Keenan's prior verbal complaint of retaliation and bullying. SA Keenan, by making the first complaint, was engaged in a protected activity.

35.   Upon information and belief, from that point forward, ASAC Burkett, with the assistance of acting RAC Alvey, acting GS LaRocca and other special agents at the PSLRO, were solicited to gather as much negative information on both IRS Keenan and SA Keenan as possible, true or false, to attempt to rebut the verbal allegations SA Keenan made to acting GS LaRocca which SA Keenan formalized in writing June 5, 2019.

36.   On June 4, 2019, ASAC Burkett had a meeting with SAC Wright regarding moving IRS Keenan to WPBDO.   This meeting initially excluded A/SAC Carter and IRS Keenan's second line supervisor, Field Intelligence Manager, Justin Miller ("FIM Miller").   Neither FIM Miller nor A/SAC Carter were aware that ASAC Burkett had the earlier meeting with SAC Wright. Later, both FIM Miller and A/SAC Carter were brought into the meeting.

37.   On June 4, 2019, during the aforementioned meeting, ASAC Burkett made several false allegations against IRS Keenan with respect to her work performance, her demeanor, her work hours and the false statement about her favoritism for SA Keenan's cases. SAC Wright allegedly ordered a ninety-day evaluation period of IRS Keenan and her work performance at PSLRO. Actually, as SAC Wright would later state in his

interview during the informal EEO process, it was a "cooling off" period among those involved, not an evaluation period. To the best of IRS Keenan's knowledge, ASAC Burkett did not disclose the fact that acting RAC Alvey and acting GS LaRocca were conducting unauthorized surveillance of IRS Keenan since mid-May 2019 and were keeping a log on her activity. This additional act of discrimination, retaliation and harassment was caused by and perpetrated by ASAC Burkett with the assistance of acting RAC Alvey and acting GS LaRocca.

38. On June 5, 2019, SA Keenan filed the complaint memorandum with SAC Wright and A/SAC Carter. The complaint addressed the allegations of retaliation and harassment. Thereafter, upon information and belief, SAC Wright sent the memorandum to the DEA OPR Chief Inspector Brian McKnight and/or his Deputy, Gary Owen.

39. On June 5, 2019, and possibly earlier, ASAC Burkett, with the assistance of acting GS LaRocca and acting RAC Alvey solicited the assistance of several PSLRO agents to obtain negative information on IRS Keenan and SA Keenan as a defense to the complaint filed by SA Keenan on June 5, 2019. Those solicited and conforming to the request for negative information are: SA Randy Matschner, SA Andrew Irwin, SA Ron Coddington and SA Robbins.

40. On June 10, 2019, acting RAC Alvey spoke with GS Sousa telephonically, inquiring into IRS Keenan's work hours. GS Sousa told him IRS Keenan worked 8 hours per day and 40 hours per week. Upon information and belief, this inquiry was in preparation for a New Rules/Reminder of Rules Memorandum acting RAC Alvey was preparing. The

memorandum, based on its content, was primarily aimed at and to be enforced against IRS Keenan and probably SA Keenan.

41.    On June 21, 2019, the Rules memorandum was sent to PSLRO personnel. In the memorandum, now RAC Alvey (he had been promoted) set the office hours to 9:00 a.m. to 5:30 p.m. which conflicted with IRS Keenan's work hours of 8:00 a.m. to 4:30 p.m. which she had followed for a long time and which addressed her child care needs as well. SAC Wright would later confirm that accommodations for such needs were approved by him for DEA personnel.

42.    On July 2, 2019, GS Sousa called RAC Alvey to discuss IRS Keenan's work hours. RAC Alvey, knowing IRS Keenan's child care needs, told GS Sousa he wanted IRS Keenan to work 9 to 5:30, he wanted to be the signer of all of IRS Keenan's subpoenas and he wanted to approve or disapprove her leave requests even though he was not in her chain of command.    All of these duties were within the purview of GS Sousa, as IRS Keenan's supervisor, not RAC Alvey. GS Sousa, in response to this attempted usurpation of his responsibilities, so informed RAC Alvey.

43.    On July 2, 2019, RAC Alvey also informed GS Sousa that IRS Keenan was not complying with the 9-5:30 work hour schedule while he, RAC Alvey, had been away. This confirmed that IRS Keenan, and no other PSLRO personnel, was being surveilled either electronically or by persons unknown assigned this task or both by RAC Alvey. GS Sousa explained that the DEA personnel manual provided for flexibility to accommodate employees with parental and other family responsibilities.  RAC Alvey stated there would be no accommodation for or exceptions to the work hour schedule

for IRS Keenan. No such action was imposed on any male employees who arrived and left at will.

44.    On July 3, 2019, IRS Keenan entered the lobby of PSLRO and observed RAC Alvey using the playback feature of the security cameras to view her arrival that day. RAC Alvey was startled and immediately moved away from the camera monitor. He knew he was engaged in an inappropriate, unauthorized and discriminatory act.

45.    On August 5, 2019, IRS Keenan observed that the location of the DEA special use vehicles had been moved from the location they were in for months, to a location where IRS Keenan parked her vehicle for the last several years. This was another act of intimidation and reprisal and to obtain a clearer view of IRS Keenan as she arrived or left the building at PSLRO. It was an act to cause further hostility in the work environment for IRS Keenan.

46.    On August 16, 2019, IRS Keenan was advised by the DEA EEO counselor that the alleged "ninety-day evaluation period" or ninety-day memorandum did not exist. SAC Wright offered at that time that FIM Miller write a memorandum to change the Table of Organization ("TO") to have an IRS permanently assigned to PSLRO. FIM Miller was made aware of this offer by IRS Keenan. He had not been so informed by DEA management. The EEO counselor also advised IRS Keenan that ASAC Burkett alleged a performance issue with her work but without any documentation to support it or complaints directly to IRS Keenan by RAC Alvey or GS LaRocca. ASAC Burkett also stated that IRS Keenan does not work her required hours and would be moved to WPBDO. The EEO counselor also informed IRS Keenan that GS Sousa told her that RAC Alvey utilized the building security camera system to track her whereabouts and

her arrival/departure times, a confirmation of what IRS Keenan believed to be occurring. During the conversation with the EEO counselor, SAC Wright did not address the harassment and retaliatory conduct. SAC Wright, in accord with IRS Keenan's request to have her work hours set at 8-4:30, directed GS Sousa to request such hours.

47.   On or about August 20, 2019, ASAC Burkett confronted GS Sousa in a hostile and aggressive manner and told GS Sousa that he, GS Sousa, was now part of an OPR investigation and he did not trust him. This threat was intended to intimidate GS Sousa for not complying with ASAC Burkett's demands regarding moving IRS Keenan to WPBDO and to try to get him to comply with ASAC Burkett's wishes.

48.   On August 23, 2019, IRS Keenan observed that all of the PSLRO personnel had exited the building prior to 5:30 p.m., all in violation of the alleged "office" work hour memorandum of June 21, 2019. No one was cited for this violation. Numerous other violations of the June 21, 2019 memo work hours by PSLRO personnel were never cited or reported, solely those alleged against IRS Keenan. RAC Alvey also inquired into IRS Keenan's whereabouts while she was on DEA business.

49.   On August 26, 2019, RAC Alvey and acting GS LaRocca meet with GS Sousa and made the same comments about IRS Keenan's work hours and the same allegations raised by ASAC Burkett. GS Sousa requested that RAC Alvey and acting GS LaRocca put their complaints in writing. They did not do so then, later or ever. RAC Alvey, ASAC Burkett and GS LaRocca continue their false rumors and derogatory comments about IRS Keenan's work performance, conduct and demeanor, all to her professional and personal detriment.

50.     On September 10, 2019, IRS Keenan submitted a memorandum through her chain of command requesting an OPR investigation into the monitoring of her arrival and departure times. Plaintiffs allege that the memorandum was forwarded to OPR by SAC Wright. To the best of IRS Keenan's knowledge, nothing was done to investigate or discipline RAC Alvey or acting GS LaRocca, or both for their unauthorized activity. Rather, upon information and belief, the OPR investigation into ASAC Burkett, RAC Alvey and GS LaRocca morphed into an investigation into IRS Keenan's activities.

51.     Since June 5, 2019, IRS Keenan or SA Keenan or both have requested and demanded of DEA senior management, including the Chief Counsel's Office, that RAC Alvey, ASAC Burkett and GS LaRocca cease and desist from such retaliatory, unlawful and hostile conduct.  With the exception of one act to temporarily remove RAC Alvey from PSLRO to WPBDO, DEA management has refused to do anything to correct this situation or address the actions of the RMOs.  In essence they have supported such actions which includes the activity of OPR personnel.

52.     On or about October 31, 2019, SA Keenan asked IRS Keenan to bring his laptop and PIV card to the PSLRO to dock his computer for updates as is required. SA Keenan, on advice of counsel and due to the fact that RAC Alvey, GS LaRocca and ASAC Burkett had been removed from his chain of command on September 30, 2019, did not go to his assigned office, PSLRO, during working hours to avoid confrontation.  IRS Keenan, placed the computer on SA Keenan's desk with the PIV card installed and left the computer to be updated unattended in this secured environment. SA Irwin saw the unattended computer with the PIV card on SA Keenan's desk, removed the PIV card and reported it to RAC Alvey and GS LaRocca who withheld the PIV card.  They

reported it to ASAC Burkett and he requested that the PIV card be delivered to WPBDO. In addition, they reported the incident to DEA OPR. IRS Keenan and SA Keenan, were separately interviewed by OPR investigators, explained the circumstances in which this occurred and ultimately were issued a caution. This incident, as former MFD SAC Weis stated, it was not of such a serious nature that it should have been reported to OPR. It was another act of retaliation in an attempt to demean, discredit and attack IRS Keenan (and SA Keenan) to assist ASAC Burkett, RAC Alvey and GS LaRocca in defending the EEO claims against the DEA and against them as the perpetrators of their unlawful actions and the alleged OPR investigations into their conduct.

53.   As early as June 2019 with the filing of the June 5, 2019 memorandum by SA Keenan, DEA management was fully aware of the unlawful actions ASAC Burkett, RAC Alvey and GS LaRocca. Despite several letters and emails to the DEA Administrator, his Principal Deputy, the Office of Chief Counsel and the Chief of Inspections during 2019, 2020 and 2021, nothing was done to protect IRS Keenan from the constant attacks on her reputation, her work performance, her work hours, her demeanor, her work ethic or the very hostile work environment created by ASAC Burkett, RAC Alvey and GS LaRocca and other SAs in their attacks on her. She was ostracized by the rest of the office personnel, including SAs she was required to work with on many cases in the office and with whom she had worked for years without any indication of any issues. With the exception of temporarily removing RAC Alvey from PSLRO in November 2019, nothing changed.

54.   The three RMOs, RAC Alvey, GS LaRocca and ASAC Burkett continued their unlawful personal and work-related attacks against IRS Keenan in their EEO interviews,

23

in their OPR interviews and in ASAC Burkett's "Chronological Timeline – Ashlee and Kyle Keenan", so-called. This "Timeline" contained numerous false, misleading and inaccurate statements by ASAC Burkett and other DEA personnel. In addition, several PSLRO SAs participated in the attack on IRS Keenan with the same baseless and undocumented allegations. A number of those comments, some of which have been mentioned above, occurred under oath with the DEA OPR inspectors and are as follows:

a. On November 21, 2019, ASAC Burkett was interviewed by OPR inspectors. Without documentation and based on false and misleading information supplied primarily by RAC Alvey and GS LaRocca, accused IRS Keenan of not working her required hours, of favoring SA Keenan's cases, of not performing her work tasks and having been a disruptive force when IRS Keenan worked at WPBDO. He did so in his "Timeline" which he provided to the OPR inspectors prior to his interview by them to set the stage for his interview. He also made the same allegations in his interview with the EEO investigator. These false statements were never addressed by OPR and ASAC Burkett was allowed to continue his unlawful and retaliatory actions against Plaintiffs unabated.

IRS Keenan has rebutted every one of the allegations against her in her EEO interview and in her full written rebuttal submitted to the EEO investigator and provide to the DEA Chief of Inspections, Brian McKnight.  The OPR investigators barely scratched the surface in her OPR interview. OPR was not really interested in what had been done to her or SA Keenan by ASAC Burkett, RAC Alvey, GS LaRocca and others at                                                                                     PSLRO.

IRS Keenan's rebuttals and the statements contained therein were confirmed by her

supervisory personnel, GS Sousa and FIM Miller, in their OPR interviews on September 24, 2019 and October 31, 2019, respectively, and in their EEO interviews where they addressed other misinformation submitted by ASAC Burkett, RAC Alvey and GS LaRocca.

b. On October 24, 2019, RAC Alvey was interviewed by OPR inspectors and he provided similar and supporting false and misleading information regarding IRS Keenan as did ASAC Burkett. He re-stated that she did not work her required hours, that she did not support the other agents in the office, that she favored SA Keenan's cases and that she was unwilling to assist other SAs at PSLRO. He also stated that he met with GS Sousa on April 11, 2019 and told him IRS Keenan was "not a right fit" for PSLRO after her being there for nearly five years. RAC Alvey also stated that he did not have any contact with IRS Keenan's supervisors prior to April 11, 2019, and he did not formalize his concerns in writing regarding IRS Keenan's performance. He admitted that he and GS LaRocca did conduct surveillance on IRS Keenan and prepared a log of her arrivals and departures. He was directed to do so by ASAC Burkett. He was not directly asked if he was properly authorized to do so. OPR avoided that salient point. He admitted he never provided the full log to GS Sousa, IRS Keenan's first-line supervisor, only the information he believed corroborated his claims against IRS Keenan. He admitted to requesting negative information from SAs at PSLRO about IRS Keenan. The full content and transcript of RAC Alvey's OPR interview is not available to IRS Keenan due to DEA policy prohibiting providing copies of OPR interview transcripts to a

complainant.[1]

    c.  On October 22, 2019, GS LaRocca was interviewed by OPR inspectors.  He repeated the same statements made by ASAC Burkett and RAC Alvey regarding IRS Keenan's work performance, work hours, accessibility, favoritism, all of which were misleading or false or both.  He admitted that he assisted RAC Alvey in surveilling IRS Keenan, helped prepare a "log" of her movements from May 13, 2019, to and including a portion of October, 2019.  He admitted that IRS Keenan was the only individual so monitored.  He stated that IRS Keenan was aware in 2018 that they were trying to move her back to WPBDO which was totally false as her then supervisor, GS Jason David, stated in his OPR interview on February 10, 2020.  GS David stated that ASAC Burkett did not ask to have IRS Keenan moved back to WPBDO in 2018 as ASAC Burkett had stated.  He also stated that IRS Keenan did not engage in favoritism towards SA Keenan.

    d.  On August 29, 2019, SA Randy Matschner was interviewed by OPR inspectors. He stated that IRS Keenan favored SA Keenan's cases, an allegation which was later proven to be false by reviewing internal documents.  He made several disparaging remarks including that several SAs no longer sought her assistance on their cases.  SA Matschner's comments were rebutted by IRS Keenan in her rebuttals in the EEO formal stage.

    e.  On September 25, 2019, SA Irwin was interviewed by OPR investigators. He mentioned that ASAC Burkett was not happy with IRS Keenan performance and that IRS Keenan was not a "good fit for our office", the same comment made by RAC Alvey.

---

[1] DEA OPR policy and procedure prohibits providing transcripts of the OPR interviews of witnesses, complainants or targets of an investigation to a complainant, or a subject of an OPR investigation.  These transcripts should be made available through discovery.

f. Most of the SAs admitted that once they heard about the fact that IRS Keenan had filed an EEO complaint they stayed away from her or as it was stated, "kept my distance". They have admitted that they alienated IRS Keenan, not that she was not approachable, but because of the pending EEO and OPR cases.  In addition, there is a continuing comment by the SAs that IRS Keenan was not like the prior IRS, Lisa Vanderpierrre (sic).  This IRS was allowed to resign or be terminated for being AWOL from her position in Australia which she left without authorization.

g. The OPR inspectors themselves, on numerous occasions, framed their questions for a specific directed answer and did not follow-up on questions that were pertinent to the unlawful actions of ASAC Burkett, RAC Alvey and GS LaRocca.  In the OPR interview of SA Robbins, Inspector Gergye pushed for answers to questions about IRS Keenan's work hours and attendance at PSLRO and asking if she "was a ghost" and how many hours she was there along with other questions directed at her and not the RMOs.

55.   IRS Keenan was the subject of an intense investigation and has never been subjected to any disciplinary action or even a comment about how she conducted herself as an IRS.  All of the allegations against her by ASASC Burkett, RAC Alvey, GS LaRocca and some of the SAs at PSLRO have been debunked and served no purpose but to harass, retaliate and discriminate against her and cause her to be subjected to a very hostile work environment.

56.   Most, if not all, of the PSLRO SAs who provided negative comments and false and misleading information about IRS Keenan had been involved in ongoing and numerous

violations of DEA policy and statutory violations which RAC Alvey, GS LaRocca and ASAC Burkett knew about and allowed to continue for several years and to the present.

57.     No other similarly situated employee of the PSLRO was subjected to the unlawful actions of ASAC Burkett, RAC Alvey and GS LaRocca as set forth herein as was IRS Keenan.

## B.  Kyle J. Keenan

58.     Plaintiff, Kyle J. Keenan, incorporates by reference thereto and re-alleges paragraphs 12 through 16 and 18 of the complaint.

59.     ASAC Burkett, while discussing the planned merger with another ASAC who was in charge of the merger, denigrated SA Keenan's service and falsely stated that "all SA Keenan did in 2018 was teach classes".  This statement was made by ASAC Burkett despite the fact that he had prepared SA Keenan's performance evaluation for 2018 and rated him as "outstanding", the highest rating one can receive as a DEA Special Agent. ASAC Burkett intended to demean and retaliate against SA Keenan for what ASAC Burkett deemed disrespect for trying out for the SRT position and the act of filing an anonymous complaint against him.

60.     On April 4, 2019, SA Keenan was warned by a co-worker, in the presence of another co-worker, that he had "a target on his back" by ASAC Burkett.  SA Keenan was also told that ASAC Burkett would use SA Keenan's supervisors to "get him".[2] This threat was delivered on behalf of ASAC Burkett by the co-worker who was and is a friend of ASAC Burkett.

---

[2] This fact will be realized as the months passed during 2019 and thereafter.

61.  On April 23, 2019, ASAC Burkett, in furtherance of his animosity towards SA Keenan for the anonymous letter and for participating in the SRT program, began his attacks on IRS Keenan by falsely alleging contrived issues with respect to her performance and need to be at PSLRO. These issues have been described above in detail within IRS Keenan's claim.

62.  On April 24, 2019, ASAC Burkett continued his efforts to harass, discriminate and retaliate against IRS Keenan by attempting to have her moved to the WPBDO against the wishes of her supervisors.

63.  On April 25, 2019, SA Keenan verbally informed his supervisor, GS LaRocca, that both he and IRS Keenan were being harassed and bullied by ASAC Burkett in retaliation for SA Keenan's desire to seek a position with the DEA SRT. SA Keenan was not yet aware that ASAC Burkett perceived him to be ethe author of the anonymous letter. GS LaRocca did nothing to report SA Keenan's disclosure of the mistreatment of IRS Keenan and him by ASAC Burkett who was using attacks on IRS Keenan to "get even" with SA Keenan.

64.  The actions of ASAC Burkett and the failure of GS LaRocca to report or take any action with respect to ASAC Burkett's intentional, discriminatory and retaliatory conduct created a very hostile work environment for both SA Keenan and IRS Keenan from April 2019 and to the present. It was such a hostile work environment for SA Keenan and IRS Keenan that IRS Keenan, against her will and that of SA Keenan, was required to seek a transfer to Jacksonville, Florida to escape the hostile work environment that ASAC Burkett, RAC Alvey and GS LaRocca had created. The transfer was approved by DEA senior management. SA Keenan has to move to the

Jacksonville office as well in the near future. In essence, the entire Keenan family has had to uproot itself to avoid the discriminatory and retaliatory hostile work environment in PSLRO and the ongoing retaliatory and discriminatory actions of the Responsible Management Officials ("RMOs") and those assisting them in these actions.

65.    The unlawful actions of ASAC Burkett alone and in concert with RAC Alvey and GS LaRocca continued against SA Keenan and IRS Keenan through the month of May 2019 by continuing their attacks on IRS Keenan as set forth in paragraphs 26 through 33  above.

66.    On June 1, 2019, SA Keenan, frustrated with the harassment, hostile work environment and retaliatory actions of the RMOs, repeated his verbal report of the actions of ASAC Burkett to GS LaRocca in a stronger and colorful manner.

67.    On June 3, 2019, acting GS LaRocca, joined by acting RAC Alvey, insisted that SA Keenan submit a written memorandum and provide it to them by the next morning, June 4, 2019.  SA Keenan, due to the seriousness of the allegations, and knowing that GS LaRocca, RAC Alvey and ASAC Burkett were involved in the ongoing unlawful activities, requested and was allowed to submit the memorandum outlining the allegations of harassment and retaliation directly to then Associate Special Agent in Charge Kevin Carter ("A/SAC Carter) and then Special Agent in Charge Adolphus Wright ("SAC Wright").

68.    On or about June 2, 2019, or very shortly thereafter, ASAC Burkett, acting RAC Alvey and then acting GS LaRocca solicited any and all negative information in memorandum format they could muster, valid or invalid, up to three years in the past

from any other DEA personnel, including SA Keenan's co-worker special agents SA

Matschner, SA Irwin, SA Coddington and SA Robbins.  These memoranda were not

contemporaneous with any alleged incident and were never presented to SA Keenan at

any time in the past or present.  Some of the alleged incidents were approximately

three years old. These memoranda were to be used for the sole purpose of attacking

SA Keenan's credibility, reputation, work ethic and demeanor and to be used as a

defense to SA Keenan's report of allegations of misconduct and unlawful conduct

(protected activity and whistleblowing) by ASAC Burkett, RAC Alvey and GS

LaRocca. SA Keenan had the courage to speak up against misconduct, for the second

time, when he notified GS LaRocca that ASAC Burkett was harassing, bullying and

intimidating his wife, IRS Keenan and himself.  As stated above, several of the special

agents complied with the demands of RAC Alvey, GS LaRocca and ASAC Burkett

and provided derogatory information against SA Keenan in memorandum form.  None

of these memoranda were prepared or submitted to then GS Alvey or then RAC

Burkett when the incidents allegedly occurred. They were now being created to be

used to attack and retaliate against SA Keenan. The information provided, apparently

not important at the time of any alleged actions by SA Keenan and which had been

previously counseled or deemed false at the time, now, subsequent to the second

verbal and formal complaint of harassment, hostile work environment and retaliation

filed by SA Keenan became so allegedly important that it had to be reported to SAC

Wright and A/SAC Carter. None of this same information had been previously

reported to SAC Wright or anyone else.

69.     On June 4, 2019, ASAC Burkett, during a meeting with SAC Wright, A/SAC

Carter and Field Intelligence Manager Justin Miller ("FIM Miller"), proceeded to

vilify SA Keenan and IRS Keenan by attacking their performance, character, integrity

and overall demeanors, all without justification or documentation to support the

allegations.  ASAC Burkett's version of this meeting along with other comments from

years past was memorialized in a document entitled "Chronological Timeline: Ashlee

and Kyle Keenan". This document, provided to DEA OPR at some time between June

4, 2019, and ASAC Burkett's interview by DEA OPR in November 2019, is replete

with errors, misstatements and outright false comments.  These errors, false statements

and misleading comments were rebutted by SA Keenan in his formal EEO case and

submitted in writing to the EEO investigator. Upon information and belief, DEA OPR

has done nothing to address these falsities and instances of lack of candor, all to the

detriment of the SA Keenan and IRS Keenan and has put both Keenan's in a very

hostile and dangerous position at PSLRO.  SA Keenan did not become aware of the

entire content of the memoranda until December 2020.

70.     On June 5, 2019, SA Keenan submitted the aforementioned memorandum

addressing the actions of ASAC Burkett, RAC Alvey and GS LaRocca to SAC Wright

and A/SAC Carter.  SAC Wight forwarded the complaint to the DEA OPR sometime

thereafter.

71.     On June 19, 2019, two weeks after SA Keenan's submission of his complaint,

ASAC Burkett submitted a memorandum compiled by RAC Alvey and GS LaRocca

allegedly on June 3, 2019.  However, the memorandum includes individual

memoranda dated as late as June 17, 2019, a clear impossibility that the RAC Alvey

memorandum had been prepared on June 3, 2019. This memorandum, intentionally backdated, was submitted for the sole purpose of initiating an OPR investigation as to SA Keenan and IRS Keenan in retaliation for SA Keenan's protected disclosures of wrongdoing by ASAC Burkett as set forth in the anonymous letter and in retaliation for filing the complaint memorandum on June 5, 2019.

72.     Subsequent to the submission of the June 19, 2019, RAC Alvey memorandum to both SAC Wright and A/SAC Carter, both of them independently reviewed the contents (memoranda by co-workers, Alvey and LaRocca) of the Alvey memorandum and both of them, per the OPR transcript of their interviews on December 11, 2021 and December 10, 2019 respectively, deemed the allegations contained in the June 19, 2019 RAC Alvey memorandum to be nothing more than retaliation by ASAC Burkett, RAC Alvey and GS LaRocca, not credible and not worthy of being reported to DEA OPR.

73.     The RAC Alvey memorandum was, without the knowledge or consent of SAC Wright or A/SAC Carter, provided to the DEA SE OPR office in Plantation, Florida by ASAC Burkett. ASAC Burkett circumvented the chain of command and provided it to Senior Inspector, Peter Scrocca with whom ASAC Burkett had a close personal relationship and who was the investigator in charge of the investigation into the allegations against ASAC Burkett.

74.     On July 2, 2019, SA Keenan, after being out all night on an SRT operation, was summoned to attend a meeting with RAC Alvey and GS LaRocca to discuss SA Keenan's performance evaluation. No other DEA Special Agent or other personnel assigned or working at PSLRO or possibly throughout the entire MFD were required

to attend such a meeting.  No one else had a "quarterly evaluation".  SA Keenan had

never been subjected to such an action by any supervisory personnel in his then

sixteen years with the DEA as a special agent in which he had received all outstanding

performance evaluations, including those from ASAC Burkett when he was the RAC

of PSLRO. SA Keenan was being discriminated against, retaliated against and treated

in disparate manner simply because he filed an official complaint against ASAC

Burkett, RAC Alvey and GS LaRocca.

This meeting deteriorated into a session where SA Keenan was accused of using

colorful language on June 1, 2019 when he reported, for the second time, that both he

and his wife were being bullied, harassed and discriminated against by ASAC Burkett

on nearly a daily basis.  These allegations were set aside and SA Keenan was

threatened with a lower performance evaluation at the end of the fiscal year, namely,

October 2019.

75.     On July 31, 2019, SA Keenan was summoned to the DEA OPR office in Plantation,

Florida for an interview.  SA Keenan believed the interview was concerning his

complaint against ASAC Burkett, RAC Alvey and GS LaRocca.  Rather, the two OPR

inspectors, Brad Uhl and Thomas Gergye, focused on the RAC Alvey June 19, 2019,

memorandum and the various allegations of misconduct by SA Keenan.  It was clear at

this point that the victims, SA Keenan and IRS Keenan, were the targets of the

investigation, not those who were the actual offenders.  The inspectors did not address

even one allegation of misconduct by ASAC Burkett, RAC Alvey or GS LaRocca.

These inspectors were assigned by Senior Inspector Peter Scrocca, ASAC Burkett's

friend, to interview SA Keenan.

76.     Upon information and belief, as was recently discovered, OPR Inspector Brad Uhl
        is also a close friend of ASAC Burkett.  Neither ASAC Burkett nor Inspector Uhl
        disclosed this relationship to DEA senior management, the DEA Board of Professional
        Conduct or anyone else.  Inspector Uhl was recently promoted to the Senior Inspector
        (GS-15) position at the SE OPR in Plantation, Florida. Such a relationship calls into
        question the entire investigation of ASAC Burkett's, RAC Alvey's and GS LaRocca's
        unlawful conduct towards SA Keenan and IRS Keenan and their violations and those
        of others at PSLRO for violations of statutory and DEA policies.  Upon information
        and belief, they have never been disciplined regarding their misconduct and policy
        violations including those with criminal violation implications.

77.     On July 30, 2019, SA Keenan contacted the DEA EEO office to report the unlawful
        and policy violating actions of ASAC Burkett, RAC Alvey and GS LaRocca.  SA
        Keenan's initial interview with the EEO counselor occurred on August 20, 2019 and
        subsequent thereto the counsellor contacted ASAC Burkett, RAC Alvey and GS
        LaRocca.  Thus, as of late August or early September 2019, all three of the
        Responsible Management Officials ("RMOs) were aware that SA Kenan had filed an
        informal EEO complaint against DEA, naming them as the RMOs. IRS Keenan, as
        stated above, had filed her EEO informal complaint prior to July 2, 2019, precipitating
        the actions of the RMO's against SA Keenan on July 2, 2019.

78.     During the rest of the summer of 2019, the RMOs continued their plans to attack
        SA Keenan to diminish his credibility, reputation and character in retaliation for SA
        Keenan's complaint filing with the DEA OPR. They did so by interfering with SA
        Keenan's Narcan classes in which he was requested to assist.  On or about July 22,

2019, ASAC Burkett intentionally failed to inform SA Keenan that he had been

requested to assist in presenting a class at the request of DEA SA Pat Johnkin,

Quantico, Virginia, DEA's Training Center.

79.    On September 5, 2019, SA Keenan sought approval from GS LaRocca, his

supervisor, to assist with a warrant that may involve fentanyl, a dangerous and deadly

substance which, if handled improperly, could place DEA and local law enforcement

personnel in danger of severe consequences, including death. SA Keenan is the DEA

MFD expert in the handling of such drugs among many other drugs.  GS LaRocca did

not respond for a period of seven hours, another attempt to obstruct SA Keenan in the

performance of his duties.  On or about 1955 hours that same day, SA Keenan was

contacted by a DEA Task Force Officer from Martin County, Florida, Sherriff's Office

(SA Keenan's area of responsibility) to execute a search warrant the next morning.

SA Keenan amended an existing operational plan and tried to reach GS LaRocca.

There was no response. Due to the experience with GS LaRocca earlier in the day, SA

Keenan contacted RAC Alvey who reached GS LaRocca and contacted SA Keenan.

GS LaRocca was furious, yelling and said does SA Keenan know who he, La Rocca

was, a blatant threat.  Ultimately, after GS LaRocca called ASAC Burkett the

operational plan was approved.  GS LaRocca accused SA Keenan of stating that

LaRocca was on a prescription drug Ambien.  That did not happen.

80.    On September 16, 2019 SA Keenan's legal counsel sent an email containing a letter

to Acting DEA Administrator Uttam Dhillon with a copy to Principal Deputy

Administrator Preston Grubbs setting forth the issues related to both SA Keenan and

IRS Keenan and requested that action be taken to end the retaliatory attacks on them, all to no avail.

81.    On Friday, September 27, 2019, GS LaRocca called SA Keenan about a meeting to "clear the air". This call was witnessed by another individual. SA Keenan went to the office despite the fact that he was on sick leave because his minor son was sick at school. He left his son with IRS Keenan while he attended the meeting. During the meeting RAC Alvey accused SA Keenan of going outside of the chain of command on September 5, 2019 by contacting him. RAC Alvey then accused SA Keenan of stating that GS LaRocca was taking a prescription drug Ambien, which SA Keenan denied several times. This was not a meeting to "clear the air". It was an attack on SA Keenan and to try to get him to react in a negative manner. SA Keenan also reminded RAC Alvey and GS LaRocca that there was an ongoing OPR investigation and they were not supposed to discuss certain matters.

RAC Alvey and GS LaRocca raised their voices and insisted on discussing issues under investigation by the DEA OPR. SA Keenan sat up to leave the meeting but was shouted down with profanity and he sat down again and RAC Alvey started again about the alleged Ambien comment. SA Keenan again raised the issue of the OPR investigation and stated he was leaving. RAC Alvey said he could not do so. SA Keenan reminded RAC Alvey and GS LaRocca that he was on sick leave and left the meeting. GS LaRocca approved but told SA Keenan he was insubordinate. This is a charge that was made against SA Keenan later by RAC Alvey and GS LaRocca to the OPR which was dismissed. By a subsequent e-mail, GS LaRocca rescheduled the

meeting for October 1, 2019. The e-mail advised SA Keenan to be there and included blatantly false statements.

82.     SA Kenan immediately contacted the OPR inspectors and his attorney who contacted DEA MFD Division Counsel, Ms. Kerry Fleck. Ms. Fleck was not immediately available. SA Keenan also contacted Ms. Fleck by e-mail but she did not reply to his e-mail.

83.     On September 30, 2019, SA Keenan's attorney contacted the MFD's acting SAC, Kevin Carter, by email and spoke directly with Division Counsel Ms. Fleck. SA Keenan replied to GS LaRocca and copied RAC Alvey, ASAC Burkett and acting SAC Carter requesting a meeting with acting SAC Carter. Shortly thereafter, acting SAC Carter replied, cancelled the proposed October 1, 2019 meeting scheduled by GS LaRocca and told GS LaRocca and RAC Alvey to "stand down". He was to contact ASAC Burkett to discuss this matter. In spite of acting SAC Carter's efforts, while A/SAC and as SAC of the MFD, the RMOs continued to violate policy and find new ways to retaliate against SA Keenan and IRS Keenan.

84.     Acting SAC Carter stated in his December 10, 2019 OPR interview that as he had said in June 2019, the actions against SA Keenan and IRS Keenan were retaliation for the filing of the OPR complaint against ASAC Burkett, RAC Alvey and GS LaRocca. OPR investigators ignored this statement and continued to press the investigation into the allegations against SA Keenan.

85.     As a result of the actions of ASAC Burkett, RAC Alvey and GS LaRocca, SAC Wright removed them from SA Keenan's chain of command. SA Keenan was then, for a period of time, under the chain of command of GS Vicky Peterson (now retired)

and ASAC Keith Barker. This created a problem for SA Keenan in that he did not report to the PSLRO office but did have to go there on many occasions to "dock" his computer, address supply issues for his other functions, collect his mail, maintain the Clandestine Lab specialty vehicle and log into his various databases. In essence, he did not have an office in which he could perform his duties. He was required to use his home and the Martin County Sherriff's Office as his office to do so. As a result, SA Keenan had to go to the PSLRO during late evening hours and on the weekends to use the PSLRO facilities he needed to fully perform his duties all without compensation, overtime or otherwise. This situation exacerbated an already hostile work environment for SA Keenan and led to an occurrence regarding a PIV card.

86.     The fact that ASAC Burkett, RAC Alvey and GS LaRocca were removed from SA Kenan's chain of command did not stop them from continuing their unlawful and prohibited actions against SA Keenan. They believed, and subsequent facts confirmed, that they were going to be protected by DEA personnel in OPR, including the Senior Investigator at the SE OPR office, the Chief Inspector himself, Brian McKnight and DEA senior management including then Principal Deputy Administrator, Preston Grubbs.

87.     On or about October 2, 2019, RAC Alvey and GS LaRocca, and with the concurrence of ASAC Burkett, in furtherance of their continued harassment, retaliatory conduct and retaliatory hostile work environment against SA Keenan, prepared and submitted SA Keenan's yearly performance evaluation. In that evaluation, SA Keenan, who had received "Outstanding" evaluations for every year of his then eighteen-year career with DEA, was reduced two levels to an overall rating of

successful without justification or a stated basis therefor. A possible consequence of the lowered evaluation was that, technically, SA Keenan would not be able to serve on the DEA SRT of which he was a valued member. No other Special Agent in the PSLRO received such a low performance evaluation. In fact, all of the other special agents received outstanding evaluations. SA Keenan, knowing it was an intentional act by ASAC Burkett, RAC Alvey and GS LaRocca, was devastated knowing it was retaliation for engaging in protected activities, to wit, report of misconduct by these same supervisors against both he and his wife and the filing of an EEO complaint. ASAC Burkett, in one of his sworn statements stated that commented that SA Keenan should have received an "unsuccessful" and that "successful" was a gift.

88.    SA Keenan timely filed a grievance regarding the performance evaluation and ASAC Keith Barker was assigned by SAC Wright to review the October 2019 performance evaluation. ASAC Barker found that the subject evaluation was totally devoid of any basis for its conclusions, that none of the documentation they attempted to use to justify the low evaluation had ever been provided to SA Keenan prior to their use  in preparing the evaluation, that SA Keenan was not provided an opportunity to address the comments, that several of the documents (memoranda) were back dated up to two years and not prepared contemporaneously with any alleged incident, and that SA Keenan had performed his duties at least as good as that of his co-workers who received outstanding overall performance ratings. ASAC Barker reversed the decision and findings of GS LaRocca, ASAC Burkett, and RAC Alvey and returned SA Keenan's evaluation to outstanding.

89.    On or about October 31, 2019, SA Keenan's computer needed to be updated. He
was advised not to go to the office to avoid any conflict with DEA personnel including
RAC Alvey and/or GS LaRocca. He then asked IRS Keenan to bring his laptop and
computer to the office, and using his PIV card in such a secured environment, IRS
Keenan left the computer in SA Keenan's desk space to be updated. SA Irwin, seeing
the unattended laptop and knowing it belonged to SA Keenan, removed the PIV card
and reported it to GS LaRocca and RAC Alvey who withheld the PIV card. They
immediately reported the incident to ASAC Burkett who required that the PSLRO
administrative assistant bring the PIV card to the West Palm Beach office. The
incident was reported to DEA OPR. As a result of the investigation into the incident,
SA Keenan and IRS Keenan were cautioned. SA Irwin referred to SA Keenan's desk
as his former desk. SA Keenan was never transferred out of PSLRO. The desk was
SA Keenan's assigned desk since his arrival at PSLRO in 2013.

90.    SA Irwin, the alleged security officer for PSLRO, acted in concert with GS
LaRocca and ultimately ASAC Burkett, in furtherance of their efforts to discredit SA
Keenan and IRS Keenan, attack their credibility and further retaliate against them and
maintain and exacerbate the existing hostile work environment, by reporting the
alleged policy violation regarding the use of PIVs.

SA Irwin had himself, on numerous occasions, left confidential and sensitive
information in open view on his desk, including, but not limited to the PIV cards of
two Task Force Officers with identifying information including their photos. He also
maintained a confidential source wire basket that he left in plain view with the
identifying information and records pertaining to the confidential sources which he left

unattended on weekends while cleaning personnel were in the secured area of the building.

None of these more serious violations of the handling of sensitive and classified information, all known to RAC Alvey and GS LaRocca, were ever reported up the chain of command or to DEA OPR, by either of them.  SA Keenan and IRS Keenan were reported for a much less serious technical violation.  In fact, senior management officials have commented that the report of the laptop update should never have been reported as it was petty. Another example of retaliatory and discriminatory conduct by GS LaRocca, RAC Alvey and ASAC Burkett.

91.    On October 31, 2019, counsel sent another letter to Acting DEA Administrator Uttam Dhillon addressing the most recent actions of ASAC Burkett, RAC Alvey and GS LaRocca ("RMOs").  In that letter, Mr. Dhillon was reminded of the prior communication from the undersigned and again requested that the DEA senior management order them to cease and desist from any further actions.  This did not occur. Mr. Dhillon took no action to protect SA Keenan and IRS Keenan from the ongoing attacks by the three RMOs.  This same communication was sent to A/SAC Carter for his review on November 1, 2019.

92.    Upon information and belief, A/SAC Carter attempted to seek a resolution of the issues regarding the actions of the RMOs but was not allowed to pursue said resolution per direction from senior management personnel at DEA Headquarters.

93.    On or about November 2019, Senior DEA Management, transferred RAC Alvey from the PSLRO to the WPBDO as a Group Supervisor.  Upon information and belief, this transfer was ordered by the Principal Deputy Administrator, Preston Grubbs,

Chief of Operations Chris Evans and Chief Inspector Brian McKnight and not A/SAC

Carter. (This stop gap action was later reversed and GS Alvey was, for some unknown

reason, returned to PSLRO as the RAC in November 2020. This action did nothing

but exacerbate the existing hostile work environment for SA Keenan.)

94.     On several occasions from October 2019 to the present, SA Keenan and legal

counsel have reported various statutory violations and violations of DEA policy by

ASAC Burkett, RAC Alvey, GS LaRocca, SA Matschner, SA Irwin and others, all to

no avail. None of them have been investigated. None of the them were ever

disciplined in any fashion for their violations, yet SA Keenan has subsequently been

reported to OPR for two alleged incidents including one in 2016 and one in 2014, all

of which were addressed and dismissed by ASAC Burkett at the time. In addition, SA

Keenan had third party witnesses who were present at the time of the alleged acts by

SA Keenan who stated that the allegations against SA Keenan were and are false.

Furthermore, ASAC Burkett rated SA Keenan's overall performance for both years as

outstanding.

95.     The misconduct in which ASAC Burkett was involved in and which was initially

reported in March 2019, included misuse of government vehicles and misuse of

government property. The misuse of a government vehicle carries with it a mandatory

thirty-day suspension without pay under DEA policies and penalties and under a

specific federal regulation addressing such misuse. ASAC Burkett has never been

disciplined.

    In addition, counsel's investigation discovered that ASAC Burkett formed a

Limited Liability Company ("LLC") with the brother of Senior Inspector Peter

Scrocca (the one in charge of investigating Burkett, Alvey and LaRocca), served as the registered agent and used the DEA office address then located in Ft. Lauderdale, Florida as the business address for the LLC, all in violation of DEA policy. This was reported to DEA OPR and the DEA Chief Counsel's Office but nothing was done by DEA OPR nor was ASAC Burkett disciplined in any fashion for these acts or any other misconduct. Furthermore, ASAC Burkett, in his yearly and five year updates to his background checks never reported the ownership of a private business as required by DEA policy.

As for RAC Alvey, GS LaRocca and SA Matschner, they were knowingly engaged in numerous actions of misconduct wherein they used government vehicles for their personal use and for the commercial use of a landscape business allegedly owned by SA Matschner's wife on an at-will basis, all known to RAC Alvey and ASAC Burkett (while he was the RAC of PSLRO) for years and nothing was ever reported. This conduct continued into 2020 and 2021. Rather both RAC Alvey and GS LaRocca were promoted.

SA Matschner, and possibly one other SA in the PSLRO, was engaged in the submission of false fingerprint identification information into the FBI informational system (NCIC), including one case in which SA Keenan was the arresting officer. In that situation, SA Keenan's defendant's fingerprints were used by SA Matschner himself or with his approval by another individual in another criminal case SA Matschner was involved in. Such an action may also be grounds for a charge of criminal conduct by SA Matschner. SA Matschner has never been disciplined for such violations.

These are but a few of the violations in which other PSLRO special agents were involved that have never been fully investigated nor have the offenders been disciplined.  However, for any issue they deem beneficial to their defense, ASAC Burkett, RAC Alvey and GS LaRocca and the DEA OPR will use anything, no matter how inconsequential, to retaliate or seek disciplinary action against SA Keenan.

This failure of DEA management, including by ASAC Burkett, GS LaRocca, RAC Alvey, provides additional evidence that SA Keenan's claim of disparate treatment and intentional retaliatory actions by all of the RMOs for making such reports as well as the treatment of both SA Keenan and IRS Keenan from March 2019 and to the present is valid and actionable and they intentionally created a hostile work environment for SA Keenan and IRS Keenan.

96.    In furtherance of the actions against SA Keenan, DEA OPR, under the former leadership of Chief Inspector Brian McKnight, did everything possible to avoid addressing the allegations against ASAC Burkett, RAC Alvey and GS LaRocca and any other SAs at PSLRO.

97.    Upon information and belief, and substantiated by former DEA management personnel, DEA Senior Executive Service ("SES") personnel, DEA OPR intentionally "slow-walked" the allegations against ASAC Burkett, RAC Alvey and GS LaRocca so they could not or would not be able to be used against them in this pending matter by alleging a law enforcement privilege against disclosure of the records of the investigations into their conduct.

98.    Upon information and belief, DEA senior management during the period of at least April 25, 2019 to the present have failed to properly address the allegations of

discrimination, harassment, retaliation and hostile work environments that were alleged by DEA employees, including those reported by Special Agents, including SA Keenan. Any claims that were made were "slow walked" in an effort to frustrate the claimants and cause then great expense for legal representation and costs associated with legal action against the Agency.

99.     As further evidence in support of the allegation that DEA OPR protected the RMOs and in turn DEA and the Department of Justice ("DOJ"), DEA OPR acted in furtherance of the retaliatory actions against SA Keenan by continually summonsing him to unnecessary and additional OPR interviews regarding allegations against him. These allegations, some of which are false and the remainder of which had been previously resolved through counseling, have been used by DEA OPR to discredit and retaliate against SA Keenan. The interviews were not, as they should have been, in regard to the actions of the RMOs. Those interviews, to the best of Plaintiffs' knowledge never occurred. These interviews, some of which are out of the time line established above, occurred on the following dates:

    a. On July 31, 2019, SA Keenan was summoned to the DEA Southeast office ("SE OPR") in Plantation, Florida, approximately a one and one-half hour drive from his home. This was the initial OPR interview which SA Keenan believed was in regard to the complaint he had filed on his behalf and IRS Keenan's behalf on June 5, 2019 which SAC Wright had sent to OPR in June 2019. However, the interview conducted by Inspector Brad Uhl and an associate inspector focused on the allegations against SA Keenan that were contained in the RAC Alvey Memorandum submitted to SAC Wright on June 19, 2019. The June 19, 2019 memorandum was not forwarded to

DEA OPR by SAC Wright because he believed that the memorandum was in retaliation for SA Keenan's June 5, 2019 memorandum alleging misconduct and unlawful actions by ASAC Burkett, GS LaRocca and RAC Alvey.  It was obvious to SA Keenan that DEA OPR was not going to investigate the allegations he made against RAC Alvey, ASAC Burkett and GS LaRocca because the normal process of investigating allegations of wrongdoing begins with an interview of the individual(s) who filed the complaint.  This did not occur in this interview and barely was broached in further interviews. To the best of SA Keenan's knowledge, RAC Alvey, ASAC Burkett and GS LaRocca (collectively, RMOs") were never fully interviewed regarding their actions against SA Keenan or IRS Keenan or both and have never been disciplined for their unlawful actions.

During the interview, Inspector Uhl asked SA Keenan if he wanted to drop the complaint against ASAC Burkett, RAC Alvey and GS LaRocca.  SA Keenan refused. At the time it was unknown that Inspector Uhl and ASAC Burkett were close friends as it had not been disclosed by either of them and has not been disclosed by them to date. As a result of SA Keenan's declination, the investigation into SA Keenan's alleged conduct became the focus of the investigation through completion on or about March 22, 2021.

b. On February 4, 2020, SA Keenan was again summoned to the OPR office in Plantation, Florida. This interview was in regard to the PIV card situation described in ¶ 89 above.  SA Keenan admitted that he had asked IRS Keenan to "dock" his computer with his PIV card.  This allegation and investigation against SA Keenan and IRS Keenan was, as stated by now retired senior management officials, unnecessary

and of such a minor concern that under ordinary circumstances there would never have been a report to DEA OPR or anyone else. It was and is another form of harassment, retaliation and furthering of the hostile work environment that DEA OPR has participated in furtherance of the protection of the RMOs and DEA and to attempt to totally discredit SA Keenan and IRS Keenan.

c. On February 28, 2020, SA Keenan was again summoned to the DEA SE OPR office. This was a follow-up interview regarding the allegations against him and had nothing to do with the allegations against the RMOs and their continuing retaliatory and harassing conduct.

d. On February 11, 2021, SA Keenan was summoned to the SE DEA OPR office. By this time, unknown to SA Keenan, this matter had already been submitted to the DEA Board of Professional Conduct for potential disciplinary action. The purpose of the interview, allegedly pursuant to the request of the Board of Professional Conduct, was to review, again, certain allegations regarding SA Keenan's interaction with his prior DEA supervisory personnel as far back as 2016, five years prior to the interview. Any interaction on which the OPR investigators questioned SA Keenan during this interview had been addressed by one or all of the RMOs at the time of the alleged interaction and SA Keenan had been verbally counselled. It should have ended there but DEA OPR used it against SA Keenan in the final report of the investigation as will be described below. The retaliation and fueling of the retaliatory hostile work environment continued with the assistance of not only the DEA OPR Chief Inspector's Office and its personnel but with the assistance of the DEA Board of Professional Conduct, its chairman and its members.

e.  On March 7, 2021, SA Keenan was summoned to DEA SE OPR regarding his allegations against SA Matschner with respect to the filing by SA Matschner and possibly one other SA in the PSLRO of false fingerprint information into the FBI database and NCIC, a criminal act. This information had been reported to the DEA Chief Counsel's office and directly to the DEA OPR by SA Keenan and legal counsel. To the best of SA Keenan's knowledge SA Matschner was not investigated nor has he been disciplined for misconduct or possible criminal conduct.  SA Matschner is a close friend and ally of ASAC Burkett, RAC Alvey and GS LaRocca and provided a memorandum against SA Keenan that is contained in the RAC Alvey memorandum of June 19, 2019.  In addition, SA Matschner provided inaccurate and potentially false information to the DEA OPR investigators during the OPR investigation into SA Keenan and IRS Keenan.  SA Matschner also provided biased, inaccurate and false and misleading information during his interview with the EEO investigator in SA Keenan's and IRS Keenan's EEO cases.

f.  On July 28, 2021, SA Keenan was summoned to the SE OPR office for an interview regarding additional allegations against him for alleged incidents that occurred in 2014 and 2016.  It is unknown at this time who made the allegations or how they ended up with DEA OPR but as SA Keenan informed the DEA inspectors, the allegations were and are false and he provided information as to the witnesses who were present during the alleged incidents to corroborate that nothing occurred and that the allegations against him were false. These false allegations against SA Keenan are additional evidence of retaliation, the furthering of a hostile work environment and how intent the DEA management and DEA OPR was focused on destroying SA

Keenan's credibility, character, reputation and career with DEA. As of this date, SA

Keenan has not been advised of the outcome of that investigation.

100.     In September/October 2019, ASAC Burkett, in preparation for his interview by

OPR inspectors, prepared a "Chronological Timeline- Ashlee and Kyle Keenan"

("Timeline"), so-called, and submitted it to SE OPR and SI Scrocca in advance of his

OPR interview.  His stated purpose contained in his OPR interview for providing this

lengthy document in advance was to provide OPR inspectors with his perspective of

the issues. In reality, he wanted to get his version of the actions against SA Keenan in

the minds of the OPR inspectors to begin the furtherance of the attacks on SA Keenan.

The existence of this document was unknown to SA Keenan until he received a copy

of the EEO investigator's Report of Investigation ("ROI") document in January 2020.

Upon review of this document, it contains numerous false statements,

misrepresentations and inaccurate statements.  SA Keenan submitted a rebuttal to this

alleged timeline to the EEOC investigator. IRS Keenan did the same.

101.     The aforementioned Rebuttal was provided to the DEA Chief Inspector, Brian

McKnight, by counsel. To the best of SA Keenan's knowledge, nothing was done to

investigate the identified and corroborated use of false statements, misrepresentations

and inaccurate information by ASAC Burkett included in the Timeline and made

under oath and penalty of perjury.

102.     ASAC Burkett, during his OPR interview, repeatedly attacked SA Keenan, his

work ethic, his conduct, his reputation and demeanor and repeated the false statements,

misrepresentation and inaccurate information contained in the timeline despite the fact

that he had rated SA Keenan's overall performance as a DEA Special Agent

"outstanding" for every year he was SA Keenan's supervisor, namely from FY 2013 to and including FY 2018.

103.     During SA Keenan's interview, the OPR investigators asked few questions about ASAC Burkett's conduct and numerous questions regarding SA Keenan and the allegations against him made in the RAC Alvey June 19, 2019 Memorandum.  That memorandum, had been dismissed by SAC Wright and A/SAC Carter as retaliatory and a failure of management.

The tenor of the questions to ASAC Burkett and the other DEA personnel interviewed was pro management, in the form of leading questions intended to elicit a particular response that would place SA Keenan in a bad light and ignoring the bias each individual had against SA Keenan.  The inspectors ignored the fact that several of the individuals interviewed had, at the request of RAC Alvey and GS LaRocca, prepared memoranda that involved issues two to three years prior to 2019. Only one memorandum submitted was prepared prior to the request. Not one question was directed to the individual's own misconduct or that of others, particularly that of ASAC Burkett, RAC Alvey and GS LaRocca.  There were no questions of any of SA Keenan's co-workers that would indicate a bias or anger toward SA Keenan because of his disclosure of the misconduct of many of these same individuals.

104.     The facts establish that the OPR investigation into the RMOs unlawful conduct and their DEA policy violations, allegedly commenced in July 2019, immediately morphed into an investigation of SA Keenan once the RAC Alvey June 19, 2019 memorandum was provided to DEA OPR.  There has never been an explanation as to how and why this occurred.

105.     Upon information and belief, the reason for the change in course was the result

of the close connection between ASAC Burkett and OPR SE Senior Inspector Peter

Scrocca ("SI Scrocca") and probably the close relationship between inspector Brad

Uhl and ASAC Burkett that has been recently discovered.  It changed the course of the

investigation into the RMOs into a primary investigation into allegations against SA

Keenan.

106.     SI Scrocca, with the assistance of other OPR personnel, including Inspectors

Brad Uhl and Thomas Gergye and unknown others, minimally investigated the RMOs

and their actions in order to protect the DEA from any claims against it filed by SA

Keenan or IRS Keenan or both.  However, they investigated the old and previously

resolved allegations against SA Keenan with gusto.

107.     In June 2020, SI Scrocca, after it was disclosed to DEA management and the

DEA Office of Chief Counsel and OPR that SI Scrocca had a close personal

relationship with ASAC Burkett, SI Scrocca and allegedly the SE OPR office were

removed from the investigation.  This was a misrepresentation by DEA management

in that Inspector Uhl, Inspector Gergye and others from the SE OPR continued with

the investigation while SI Scrocca remained the senior investigator for the SE OPR.

Additionally, neither SI Scrocca nor ASAC Burkett disclosed their relationship to

DEA management, OPR or the Chief Counsel's office prior to the disclosure by

counsel for the Keenan's.

108.     During the course of the OPR investigation into SA Keenan's alleged conduct

initiated by the RMOs, several co-workers at PSLRO were interviewed, namely, RAC

Alvey, SA Matschner, SA Irwin, GS LaRocca, SA Coddington and SA Robbins.  The

statements of GS LaRocca, SA Matschner and SA Irwin were very similar in nature. Each one attempted to corroborate the negative statements others made with respect to SA Keenan and what occurred on certain dates, all in a cooperative effort to discredit SA Keenan. Only a couple of the questions asked of all of these co-workers had anything to do with the allegations against the RMOs. The questions about the RMOs were to the effect that "have you seen or heard RAC Alvey, ASAC Burkett or GS LaRocca harass or retaliate against SA Keenan"? Nothing more.  The rest of the questions were directed to the allegations against SA Keenan.  (The same occurred with IRS Keenan as alleged above).

109.     A review of the typed transcripts of each interview conducted in the OPR investigation into SA Keenan[3], with the exception of A/SAC Carter, SAC Wright, GS Vicky Peterson and SA Robbins, were substantially negative with GS LaRocca forced to state that SA Keenan was one of if not the best special agent in his group.

110.     In the early spring of 2020, most DEA personnel began to "telework".  This did not cause a cessation of attacks and retaliation against SA Keenan. Unknown to SA Keenan, the investigation into his alleged conduct was still moving ahead and the investigation into the misconduct and unlawful actions of the RMOs had ended or was never conducted as required by law and policy. SA Keenan was the prime target for OPR.

---

[3] SA Keenan and counsel were only allowed to review and take notes of the transcripts of the OPR interviews.  No copies were permitted.  They will be requested during discovery.

111.     As stated above, SA Keenan was again summoned to the OPR office in SE

Florida. in June 2020 and questioned about the same issues for which he had been

interviewed on at least two occasions.

112.     On or about June 2020, SI Scrocca was allegedly removed from the

investigation into SA Keenan and possibly from the investigation, if any, of ASAC

Burkett, RAC Alvey and GS LaRocca.

113.     During the month of June 2020, the DEA senior management, the DEA Chief

Counsel's office, namely legal counsel Brooke DuBois, the DEA EEO office and

MFD Division Counsel Kerry Fleck were informed of additional violations of DEA

policy and federal statutory violations by several PSLRO employees, including RAC

Alvey, GS LaRocca, SA Irwin and SA Matschner as follows:

   a. On June 5, 2020, the EEO office was informed that ASAC Burkett's Timeline

was overly redacted in an attempt to avoid disclosure of relevant information as it

pertained to SA Keenan's EEO complaint.  It was initially unknown as to who

redacted the timeline provided to OPR by ASAC Burkett or when it was redacted.

   b. On June 8, 2020, SA Keenan's legal counsel, sent an email to DEA legal

counsel Brooke DuBois in which a number of violations of law and policy by RAC

Alvey, SA Irwin and GS LaRocca were set forth in some detail.  To the best of SA

Keenan's knowledge nothing was done by the Chief Counsel or OPR to either

investigate or otherwise address these allegations of violations.  The email also

addressed the delay in investigating the allegations against the RMOs. It was unknown

to SA Keenan that the RMOs were not going to investigated to any extent.

   c. On June 10, 2020, the undersigned sent an email and letter to acting

Administrator Shea, setting forth all of the allegations against the RMOs, the acts against SA Keenan and IRS Keenan and seeking relief for the Keenan's from DEA headquarters. This communication was responded to by DEA legal counsel, Marcia Tiersky, on behalf of Acting Administrator Shea. It merely stated that the allegations against the RMOs and others were under investigation. It did not address the issues or any protection for the Keenan's by the DEA senior management, all of which have not been addressed to this day.

   d.  On June 26, 2020, legal counsel sent an email to DEA legal counsel Brooke DuBois informing her of the information obtained regarding SI Scrocca and his undisclosed relationship with ASAC Burkett. The email also requested that DEA preserve documentation, namely, all records pertaining to ASAC Burkett's "outside" business interests and any documentation regarding ASAC Burkett's yearly self-reporting of outside business interests and any five-year background checks (SF-86 updates) to determine if ASAC Burkett had actually ever informed DEA of his outside business interests as he was required to do but intentionally failed to do so. The response was less than responsive.

114.     On July 1, 2020, the undersigned sent a follow-up email to DEA legal counsel DuBois.

115.     On August 6, 2020, the undersigned sent a detailed email to MFD Division Counsel Kerry Fleck to report several issues that needed to be resolved. One issue was the fact that SA Keenan did not have an office where he could go to perform many of his duties as a DEA Special Agent. As stated above, he had to "visit" PSLRO on evenings or on weekends when no one was around to avoid any possibility of a

confrontation that could or would be used against him.  DEA senior management did

not address this issue and SAC Carter was told not to interfere with the process.  Thus,

SA Keenan was essentially being punished because he could not enter the very hostile

work environment of the PSLRO that was created by RAC Alvey, GS LaRocca, SA

Matschner without risking further baseless and defamatory claims against him. The

email communication was referred to DEA Chief Counsel by Ms. Fleck.  Again,

nothing was done to protect SA Keenan, his reputation, character or credibility or to

resolve the issues that had been going on for over a year including his lack of an office

to use during normal working hours.

116.     On or about October 11, 2020, DEA senior management at DEA Headquarters

decided, for some unknown reason, to return GS Alvey to PSLRO as the RAC.  This

decision only exacerbated an already hostile situation.  On October 14, counsel sent an

email to DEA legal counsel Brooke DuBois regarding the potential for serious issues

for SA Keenan with the return of RAC Alvey to PSLRO and requested that DEA

senior management rescind the decision to do so.  Legal counsel responded a few days

later by stating that the decision to return RAC Alvey to PSLRO would not be

rescinded and RAC Alvey posed no threat to SA Keenan or IRS Keenan.

117.     On October 16, 2020, not having heard from DEA legal counsel, SA Keenan's

counsel sent an email to Chief Inspector Brian McKnight, Acting Administrator Shea,

Preston Grubbs and DEA legal counsel Brooke DuBois addressing the return of RAC

Alvey to PSLRO and the potential negative consequences of such an action for SA

Keenan and IRS Keenan.  It also addressed the fact that since June 2019 very little, if

anything, had been done to protect SA Keenan and/or IRS Keenan from the ongoing

attacks and retaliatory actions by the RMOs, individually and collectively which emboldened the RMOs.

Additionally, nothing had been done about RAC Alvey's acquiescence to the misuse of government vehicles by PSLRO personnel and his own misuse of government vehicles or both that had been reported to OPR and DEA Chief Counsel. The email also addressed the need for SA Keenan and IRS Keenan to go to the PSLRO office to perform certain essential duties, providing an opportunity for potential conflict that would be used against SA Keenan in the future. The email ended with a reference to the excessive delay in investigating the RMOs and removal of RAC Alvey from PSLRO until all investigations were complete and any disciplinary action had been imposed against the RMOs. There was no response from Acting Administrator Shea, Principal Deputy Grubbs or Chief Inspector McKnight. A response, allegedly on their behalf, was sent by DEA legal counsel.

118. On October 29, 2020, within a few days of returning to PSLRO, RAC Alvey attempted to demean and attack SA Keenan again by issuing an email that basically falsely accused SA Keenan of not performing his duties as required. RAC Alvey, as a result of his failure to properly and competently investigate his "allegations" before he sent the email, was proven to be totally wrong by DEA documents. His actions were meant to discredit SA Keenan with his supervisors and others in the DEA community.

119. On November 2nd and 3rd, 2020, counsel sent an email to DEA legal counsel Brooke DuBois informing her of the attempt by RAC Alvey to discredit SA Keenan regarding the filing of a report. Counsel informed DEA Counsel that RAC Alvey failed to take the proper steps to determine if a report had been filed. DEA legal

counsel responded but nothing was done to end the ongoing harassment and retaliation.

120.     On or about November 3, 2020, counsel sent another email to DEA counsel regarding an additional retaliatory and harassing action by RAC Alvey directed against SA Keenan.  Nothing was done to end this conduct.

121.     On December 18, 2020, SA Keenan and IRS Keenan met with MFD SAC Weis at a neutral site.  No legal counsel were present.  SAC Weis agreed that the manner in which the PIV card issue was handled by PSLRO was unnecessary and inappropriate.

122.     On January 14, 2021, counsel received an email from DEA Chief Inspector Brian McKnight that the allegations made against DEA OPR and the Chief Inspector's office had been re-referred to the DOJ Inspector General for investigation. Despite several inquiries, the Inspector General has done nothing to investigate the wrongdoing of the DEA OPR or the Office of Chief Inspector.

123.     On or about May 14, 2021, SA Keenan was summoned to the DEA OPR office in Plantation, Florida.  The issue was an alleged inquiry regarding the misuse of the PSLRO OGVs and pool vehicles by GS LaRocca and SA Matschner for personal landscaping purposes. At this point, for the first time, a discussion commenced regarding the anonymous complaint against ASAC Burkett in March 2019. It was obvious that no one at OPR had investigated that complaint at any time.  On May 15, SA Keenan sent a copy of the anonymous complaint to OPR.  To the best of SA Keenan's knowledge, there has not been further investigation into ASAC Burkett's conduct.

124.     On or about May 26, 2021, SA Keenan and IRS Keenan met with A/SAC

Hibbert regarding the potential for a move for IRS Keenan to another office within

MFD because of the intolerable and extremely hostile work environment at PSLRO

and WPBDO for both of them. A move/transfer would also involve SA Keenan. IRS

Keenan would have to apply for the position along with others interested in the

position.

125.     On June 2, 2021, after the filing of a report by OPR in the investigation into

SA Keenan's alleged conduct, Mr. Ludwig of the DEA Board of Professional Conduct

("Board") signed a letter proposing that SA Keenan be suspended for fourteen days for

various allegations of misconduct, the vast majority of which had been addressed by

counseling much earlier and were not of a serious nature until after SA Keenan filed

his complaint on June 5, 2019.  The allegations were the same as those included in the

RAC Alvey memorandum of June 19, 2019 plus additional actions that ASAC

Burkett, RAC Alvey and GS LaRocca attempted to impose on SA Keenan all in

furtherance of the unlawful acts by them.

126.     On June 22, 2021, SA Keenan and counsel reviewed the OPR Report of

Investigation ("OPR ROI") pertaining to the alleged investigation into ASAC Burkett,

RAC Alvey and GS LaRocca.  The report, containing several interviews of PSLRO

personnel and with a couple of minor questions about ASAC Burkett, RAC Alvey and

GS LaRocca's conduct focused nearly exclusively on SA Keenan and IRS Keenan and

their alleged "actions".  It was a one-sided investigation with a definite purpose,

protect the DEA and the offending supervisors and continue to harass Plaintiffs. The

interviews were used to attack the credibility, character, reputation and work

performance of SA Keenan and IRS Keenan. The OPR investigation was another act of retaliation by DEA with the assistance of the OPR personnel, including Inspector Brad Uhl who, as is stated above, is a friend of ASAC Burkett.

127.     On July 6, 2021, SA Keenan, with assistance of counsel, responded to the notice of proposed action in detail rebutting the allegations against SA Keenan with facts and documentation.  The rebuttal was sent to the DEA Deciding Official.  The main theme of the response was the basis for the findings, namely, the product of a series of retaliatory actions against SA Keenan. Thereafter there was an oral presentation of the same with the Deciding Official.

128.     On July 8, 2021, SA Keenan was contacted by OPR Inspector Shirrer from DEA headquarters to set a date for another OPR interview.

129.     On July 28, 2021, SA Keenan met with Inspector Shirrer.  SA Keenan was informed that there were two more complaints against him about issues that arose in 2014 and 2016.  SA Keenan explained the situations, denied any wrongdoing and provided the names and contact information from non-DEA law enforcement witnesses who were present on those occasions. Nothing has happened since that time. These late "complaints" are further acts of retaliation and harassment in a series of attempts to destroy SA Keenan's credibility, character, reputation and to send him a message that the retaliatory actions of the RMOs will continue, even with false and old allegations.

130.     On August 25, 2021, due to the size of the OPR investigatory file, SA Keenan and counsel again reviewed the OPR file because they were not allowed to have copies of the file contents.

131.     On September 24, 2021, the Deciding Official issued a decision reducing the suspension to one day.  Thereafter, SA Keenan filed a grievance, his only appeal opportunity under DEA policy and procedures.  The grievance was denied and SA Keenan served his one-day suspension on November 26, 2021, the day after Thanksgiving.

132.     SA Keenan and IRS Keenan , as a result of the actions of the RMOs and the cooperation of those at PSLRO who had engaged in numerous policy violations without a problem and several inspectors from SE OPR, including those who are friendly with ASAC Burkett, and with the approval of the DEA Chief Inspectors Office, have been forced to seek positions at the DEA Jacksonville District Office, uproot their family and take a significantly lower salary to avoid any further retaliatory acts or the hostile environment in PSLRO and WPBDO which DEA management has failed to address for over two and one-half years. Plaintiffs have thus been forced to endure adverse employment consequences, to their damage.

## COUNT I

133.     Plaintiffs, Ashlee N. Keenan and Kyle J. Keenan sue Merrick Garland and in his official capacity as United States Attorney General for discrimination, retaliation, harassment and retaliatory hostile work environment under Title VII.

134.     Plaintiffs incorporate by reference and reallege paragraphs 1 through 132  of the complaint.

135.     Each Plaintiff engaged in activity which is protected under Title VII.

136.     As a direct and proximate result of the protected activity each Plaintiff has suffered adverse employment actions.

137.     The discriminatory, retaliatory and harassing actions were taken by supervisory personnel within the Department of Justice.

138.     The Department of Justice has intentionally maintained these retaliatory and unlawful practices to the detriment of Plaintiffs as employees.

139.     The harassment by Department of Justice personnel in the Drug Enforcement Administration has created an intolerable hostile work environment.

140.     The discriminatory actions by the Defendant and its personnel, including the DEA, have created an intolerable hostile work environment.

141.     The retaliatory actions of Department of Justice personnel have created an intolerable hostile work environment.

142.     The Defendant at all relevant times, knew or should have known, of the discriminatory, and harassing retaliatory actions being taken against each Plaintiff. In fact, Defendant was made aware of the retaliatory acts on numerous occasions without correcting such actions.

143.     The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct by its inaction.

144.     The Defendant, through the supervisors of plaintiffs and other personnel not in Plaintiff Ashlee N. Keenan's chain of command, including ASAC Burkett, RAC Alvey and GS LaRocca and others, has engaged in, directed, and/or ratified retaliatory conduct and frustrated the Plaintiffs' efforts to obtain relief under Title VII and the Civil Rights Act of 1964, as amended.

145.     The Defendant, through acceptance of such conduct, has fostered an attitude among supervisors and other personnel that harassment, discrimination and retaliation

against employees in order to discourage the reporting of misconduct or to engage in or participate in protected activity, including EEO activity, is an acceptable employment practice by supervisors at the DEA PSLRO, WPBDO, the Miami Field Division and in the DEA generally.

146.    The Defendant and the DEA have engaged in and allowed unlawful actions, such as retaliation, that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" for fear of retaliation, harassment and/or discrimination for doing so.

147.    Because of the willful actions of the Defendant and its supervisors, and as a proximate cause thereof, each Plaintiff has been and continues to be denied their right to equal employment opportunities in violation of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*

148.    As a result of the foregoing, each Plaintiff has been damaged.  Such damages include, but are not limited to discipline, suspension from employment, loss of pay, loss of pay into the future, loss of training, loss of office space, loss of an amicable work environment, loss of an amicable and safe living environment, harm to their professional reputations, humiliation, degradation, embarrassment, severe emotional suffering and have been forced to move to a DEA Office in Jacksonville, Florida from Port St. Lucie Florida with a substantial reduction in pay of approximately Twenty Thousand Dollars per year for each of the Plaintiffs. The Plaintiffs will continue in the future to suffer the same damages absent relief from this Court.

149.    The Plaintiffs have satisfied all conditions and precedent to the filing of this suit.

WHEREFORE, the Plaintiffs requests protective relief, a judgment for damages,

attorneys fees and costs and such other and further relief this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II

150.    Plaintiff, Ashlee N. Keenan sues Merrick Garland, in his official capacity as the United States Attorney General, for gender discrimination and disparate impact under Title VII.

151.    Plaintiff Ashlee N. Keenan incorporates by reference and realleges paragraphs 1 through 149 of the complaint.

152.    The Defendant has followed a course of conduct which results in disparate treatment between men and women employees.  Plaintiff Ashlee N. Keenan was treated in a negative and hostile manner, was subjected to unauthorized surveillance by individuals not in her chain of command at the direction and with the acquiescence of supervisory personnel not in her chain of command.  All of the male employees in the office were treated differently and none of them were subjected to the humiliation of unauthorized video surveillance or the recording of their entry and exiting of the PSLRO despite many of them having been absent from the office or arrived late or left early without justification.  Nor were any of the male employees, other than Plaintiff Ashlee N. Keenan's husband, Plaintiff, Kyle J. Keenan, demeaned, had their work performance denigrated, were harassed by trying to transfer them, retaliated against or caused to endure a very hostile work environment. No other similarly situated employee has been subjected to such actions.  The Defendant's practice of disparate treatment in favor of men cannot be justified as a business necessity.

153.    As a direct and proximate result of Defendant's actions, Plaintiff, Ashlee N. Keenan, has been denied equal employment opportunities in the terms and conditions of employment by the Defendant because of gender (female).

154.    All of the above discriminatory actions were taken by supervisory personnel within the Department of Justice and the Drug Enforcement Administration specifically in order to deprive Plaintiff, Ashlee N. Keenan, of employment and other employment action because of her gender (female).

155.    The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of its employees including Plaintiff Ashlee N. Keenan.

156.    The above referenced actions have created an intolerable hostile work environment for Plaintiff Ashlee N, Keenan and Plaintiff Kyle J. Keenan.

157.    The Defendant, at all relevant times knew or should have known of the above referenced discrimination against Plaintiff, Ashlee N. Keenan.

158.    The Defendant has failed to take the necessary action to prevent or correct the complaint of discrimination and, in fact, has ratified such conduct.

159.    The Defendant, through ASAC Burkett, RAC Alvey and GS LaRocca and others not in her chain of command, has engaged in, directed or ratified conduct and denied and frustrated Plaintiff's efforts to obtain relief under Title VII.

160.    The Defendant, through acceptance of the complained conduct, has fostered an attitude among supervisors in the Port St. Lucie Resident Office, the West Palm Beach District Office and throughout the Miami Field Division that gender discrimination (female) and the imposition or causing a hostile work environment are acceptable employment practices.

161.    Because of the willful actions of the Defendant and its supervisory personnel, and as a proximate cause thereof, Plaintiff Ashlee N. Keenan has been and continues to be denied her rights to equal employment opportunity in violation of Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*

162.    As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to discipline, loss of pay, loss of office space, loss of an amicable work environment, loss of career opportunities, harm to her professional reputation, humiliation, degradation, embarrassment, severe emotional suffering and distress and been required to move to a different job location in Jacksonville, Florida with a substantial loss in pay in the amount of Twenty Thousand dollars per year to avoid the retaliatory hostile work environment at PSLRO and WPBDO.  Plaintiff will continue to suffer the same damages in the future absent relief from this Court.

163.    The Plaintiff has satisfied all conditions precedent to the filing of this suit.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs, Ashlee N. Keenan and Kyle J. Keenan hereby demand a trial by jury on all issues so triable.

DATED:  December 30, 2021                 Respectfully submitted,

                                          Domenic Lucarelli, Esq.
                                          Lucarelli Law

351 Airport Pulling Road
Naples, FL 34104
(239) 775-8889
lucarellilaw@comcast.net
Attorney for Plaintiffs